JANVIER, Judge.
In an accident which occurred during and arose out of his employment in the hazardous business of his employer, Ryan Stevedoring Company, Inc., Patrick Philip Farley was killed on August 11, 1956. He was survived by his widow, Mrs. Frances Fourcade Farley, from whom he had been judicially separated a mensa et thoro since the month of January, 1950. Alleging that at the time of and for some time prior to his death she had been solely dependent upon the said Patrick Philip Farley, his widow brought this suit for compensation against the said employer and its insurance carrier, American Mutual Liability Insurance Company. She prayed for compensation at the rate of $35 per week for 400 weeks, with legal interest on past due payments, together with medical and funeral expenses in the maximum sum of $2,500 and also a penalty of 12% on the total amount due and for attorney’s fees.
The defendants admitted the employment of Farley and that he had been killed in the course of his employment, but for lack of information they denied that he and the plaintiff had been husband and wife at the time of his death, and they denied that she had been dependent upon him. They averred that they had paid all necessary medical and funeral expenses and they de *827 nied liability to plaintiff and prayed for a’ dismissal of her suit.
From a judgment dismissing the suit plaintiff has appealed.
The sole question which confronts us is one of fact, that is, whether the plaintiff, prior to and at the time of the death of Farley, had been dependent upon him to any extent.
Since it is conceded that during the several years preceding Farley’s death, he and plaintiff had not lived together as husband and wife, the burden of proving actual as well as legal dependency rested upon her.
LSA-R.S. 23:1255 provides in part as follows:
“No compensation shall be payable under this Part to a widow unless she was living with her deceased husband at the time of the injury or death, or was then actually dependent upon him for support. * * *
In Kilman v. Smith, La.App., 28 So.2d 499, 501, appears the following:
“ * * * If, at the time of the accident and death of the husband, he and his wife are in fact living separate and apart, the presumption of dependence does not apply. It then becomes a question of fact, the establishment of which, in case of contest, devolves upon the wife. She is required to prove the fact by a preponderance of the evidence. * *
This dependency must be actual as well as legal.
In Haynes v. Loffland Bros. Co., 215 La. 280, 40 So.2d 243, 244, the Supreme Court said:
“ * * * one not conclusively presumed to be dependent upon the earnings of the deceased employee for support * * * must not only prove he is or they are legal dependents of the deceased but also that the deceased employee was actually contributing to their support at the time of the accident and death. * * *
Let us then examine the facts. In 1949 the deceased Farley and his wife, the present plaintiff, discontinued the marital relationship, he leaving the matrimonial domicile and taking up his residence in an outhouse on the lot of ground on which was also located the house which belonged both to him and his wife and formed a part of the community which existed between them. During the year 1951 or thereabouts, Farley discontinued his residence in this so-called outhouse and took up his residence with his sister, Mrs. Elizabeth F. Hughes, in a different neighborhood. The wife continued to live in the home belonging to the community.
In the Juvenile Court, in May, 1949, Farley was found guilty of failing to support his wife and young daughter and by an order of that Court he was required to pay $15 per week “for the support of his wife and child,” and it was provided that those weekly payments should be paid through the Juvenile Court.
In June, 1949, in the Civil District Court for the Parish of Orleans, Farley brought a separation proceeding against his wife, praying for judgment of separation from bed and board and alleging cruelty on her part. His wife reconvened, praying that she be granted judgment of separation and alleging intemperance on the part of her husband. She also prayed that she be awarded the custody of the younger daughter — there being an older married daughter —and that she be awarded alimony in the sum of $25 per week. In October, 1950, there was judgment in her favor granting her a separation from bed and board and awarding her the custody of the minor daughter and reserving to her the right at any time to make a claim for alimony. The alimony payments, which for the time had been made through the Juvenile Court, were discontinued and the wife took no action towards claiming alimony in the Civil District Court. For several years *828 the plaintiff had been living with her daughter and son-in-law and the younger daughter in the home owned by herself and her deceased husband forming a part of the community which existed between them.
It is the contention of the wife, now the plaintiff, that, although the alimony payments through the Juvenile Court were discontinued many years ago, and although she made no effort to obtain an order for alimony through the District Court, her husband had, during the several years which elapsed, except for a time during which he was ill, been regularly each week making payments directly to her for $15; and that during those years and, at the time of his death, those weekly payments constituted her only income, and that she should have been considered to be totally dependent upon him for support in fact as well as in law.
The District Judge evidently did not believe this rather strange story of the wife which, to some extent, is corroborated by other members of the family.
An examination of the testimony of the wife and of the members of her family leaves us in more than considerable doubt as to the verity of their statements wherein are many contradictions and inconsistencies. Furthermore it appears that the son-in-law was earning a weekly wage of more than $70 and that the minor daughter, who also lived with them, was earning more than $50 per week. We find it difficult to believe that under those circumstances they were contributing nothing towards the support of their mother, and that her only income was the $15 per week which they say her husband paid her regularly.
Since the District Judge did not believe this evidence, our conclusion is that no such payments were being made. The evidence does not justify a reversal of the District Judge on this question of fact.
Though we find that there were no actual money contributions made by the deceased to his wife, we have thought it advisable to investigate the question of whether any other support was received by her from him.
During the course of the oral argument before us it transpired that until the husband and wife decided to go their separate ways and to live separate and apart, they resided in a home which belonged to both of them, forming a part of the community which existed between them. When they decided to separate, the occupancy of the house was taken over by the wife alone, and from that time on she and a son-in-law and her married daughter and a younger daughter occupied the house. When this fact came to light, we gave thought to the fact that possibly, since the husband had, during those several years, permitted the wife to use the house without requiring any payment for its use, it might be said that he was contributing to her support the value of the occupancy of an undivided half of the house, and that accordingly she had been dependent upon him to that extent. However, a study of the wording of the section of the compensation law which is involved, LSA-R.S. 23:1231, leads to the inevitable conclusion that the wife cannot point to the use of the house in contending that she is entitled to compensation based on partial dependency. That section provides:
“ * * * If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident.”
We particularly direct attention to the fact that the dependency must be upon “earnings” in order that it form the basis of a claim for compensation.
*829 It is interesting to note that in the compensation statute as originally enacted, No. 20 of 1914, it was provided that where the injury caused death, there were certain persons who might claim to he wholly dependent upon the employee. It was further provided that if he left dependents only partly dependent upon his “earning” a different scale of payments would be made.
This requirement that the dependency upon the “earning” be shown remained in the statute until the passage of Act 38 of 1918 in which the word “earning” was eliminated, and in the act of 1918 there was provided that compensation should not be paid to a widow unless she was either residing with her husband or was “actually dependent upon him for support.” We again direct attention to the fact that in this provision there was no requirement that she be dependent upon his earnings; in other words, all that was required was that she be dependent upon him in whatsoever way he might have contributed to her support.
While the act of 1918 was in effect our Supreme Court, on two occasions, considered the particular provisions which were then in effect, and in Heinzelman v. Board of Com’rs, of Port of New Orleans, 149 La. 215, 88 So. 798, and Gregory v. Standard Oil Co. of Louisiana, 151 La. 228, 91 So. 717, discussed the question of what kind of support was necessary in order that the claim of dependency be sustained. In the Gregory case the Court held that a son, who helped his mother and father in the making of a crop, had contributed to their support and therefore they were his dependents. In the Heinzelman case the Supreme Court, referring to the act of 1918, said [149 La. 215, 88 So. 800]:
“In the act of 1914, provision was made for persons ‘wholly’ dependent upon employees suffering injury causing death within a year, and also for persons partially dependent, but from the amendatory acts (No. 243 of 1916, p. 515, and No. 38 of 1918, p. 55) the term ‘wholly dependent’ seems to have been eliminated, and the expression, ‘actually dependent on the deceased employee to any extent,’ substituted in its stead; and, as we interpret that expression, it applies to a man who, having a wife and children whom the law requires him to support, is unable to discharge that obligation and receives and depends upon aid furnished by the wife or children to enable him so to do. ‘Dependent to any extent’ is a very broad term, and seems to us to include necessary aid furnished for the discharge of any legal obligation, as well as aid required merely in supplying the personal wants of the recipients. * *
Apparently, as a result of these decisions, the Legislature, in 1928, again amended the statute and put back into it the requirement that there be dependency upon “earnings” of the deceased in order that a claim be sustained. And ever since the adoption of Act 242 of 1928 there has remained in the statute this requirement.
Another interesting case is to be found in Slaughter v. Liberty Mut. Ins. Co., La. App., 33 So.2d 86, 87, in which the Court of Appeal for the Second Circuit said:
“The evidence is conclusive that on and after December, 1943, the time of the separation, the husband, at no time made any contributions to his wife’s support from his occupation and labor. * * *.”
The Court also found that there the claim of dependency could not be based upon the fact that the widow obtained certain “funds and farm produce remaining from the liquidation of the farming operations *
The statute, which was in force at the time of the death of this employee, was Act 175 of 1948, the particular provision with which we are involved reading as follows:
“2. For injury causing death within one year after the accident there shall *830 be paid to the legal dependents of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided, for a period of three hundred weeks. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid as aforesaid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident.”
Again we direct attention to the fact that dependency here is made to depend upon the “earnings” of the employee. In 1956, in Act 412, this provision was again repeated in identical language except for the fact that claims might be made within two years and an award for compensation might be made for 400 instead of for 300 weeks.
In Haynes v. Loffland Bros. Co., supra, the Supreme Court discussed at great length the entire statute and its amendments since its original adoption in 1914, showing that in the original act it was required that the contribution be from “earnings” of the employee, that this requirement was left out of subsequent acts until 1928 when it was again restored. The Court pointed out that in the Heinzelman case it had interpreted the words [215 La. 280, 40 So.2d 247] “dependent to any extent” as being a very broad term “including aid for the discharge of a legal obligation to support, as well as that actually given in supplying personal wants.”
It is true that in that case the Supreme Court was not discussing the particular question which is before us, but a reading of the decision clearly indicates that there is a vast distinction between the statute which the Court was considering in the Gregory case and in the Heinzelman case and the statute with which we are concerned.
We have not lost sight of the fact that in the act of 1948 there is a further provision which is now section 1255 of Title 23 of the LSA-Revised Statutes and which provides that:
“No compensation shall be payable under this Part to a widow unless she was living with her deceased husband at the time of the injury or death, or was then actually dependent upon him for support * * *.”
It is true that in this provision there is not expressly included the requirement that the support be provided from the earnings of the deceased husband, but that provision is in section 1231, as pointed out, and it is our opinion that section 1255 was not inserted in order to eliminate the requirement that the support come from earnings, but merely was to provide that the dependency upon the deceased be “actual.”
Our conclusion is that, since the present requirement was restored after the decisions in the Gregory and in the Heinzelman cases, it must have been restored with a view of eliminating the results which were found necessary in those two cases and that, because of the present requirement that there is no dependency unless it be upon the earnings of the deceased, no dependency should be considered to have resulted from the fact that the wife continued to live in the house which belonged to her jointly with her husband.
We have still another thought on the matter; that, where compensation is due, in fixing the amount thereof there may be taken into consideration only the “earnings” of the employee and not income from other sources.
We feel that here there was no dependency either based on actual financial contribution from earnings or resulting from the use of the house.
*831 Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.