hPLOTKIN, Judge.
Metro Lighting and Electrical Service (“Metro”) appeals an Office of Worker’s Compensation judgment awarding temporary total disability benefits in the amount of $243.75 per month to Blake Bayard based on a finding that Blake was a dependent of his grandfather, James Farmer, who was permanently injured as a result of his employment at Metro.

Facts

Mr. Farmer injured his knee on February 28,1994, while in the course and scope of his employment with Metro. A consent judgment later awarded him temporary and total disability benefits of $220 per week. In October 1995, Mr. Farmer was incarcerated in the Orleans Parish Jail, where he has since remained.
After learning of Mr. Farmer’s incarceration in April 1996, Metro’s worker’s compensation insurer, Louisiana Worker’s Compensation Corporation (LWCC), discontinued Mr. Farmer’s benefits. The decision to discontinue benefits was based on the provisions of LSA-R.S. 23:1201.4, which provides that _J2a.ll compensation benefits are forfeited while a claimant is incarcerated. Mr. Farmer’s grandchild, Blake, brought an action to enforce the consent agreement based upon other language of LSA-R.S. 23:1201.4, which allows for the continued payment of indemnity benefits if dependents of the claimant rely on such benefits for support.
Following a hearing, the worker’s compensation judge found that Blake was at least partially dependent on Mr. Farmer’s benefits. After calculating the income and expenses involved in supporting Blake, the court ordered that benefits in the amount of $243.75 per month be reinstated and paid to Blake’s mother, Leslie Nelson, as his tutrix. Additionally, the worker’s compensation judge ordered that Mr. Farmer’s medical benefits be reinstated, finding La. R.S. 23:1201.4 unconstitutional as it applied to Mr. Farmer’s claim for medical benefits and care.
On appeal, Metro claims only that the trial court committed manifest error in holding that Blake is Mr. Farmer’s dependent who relies Mr. Farmer’s compensation benefits for support. Metro failed to appeal the portion of the decision ordering reinstatement of medical benefits for Mr. Farmer, or the ruling that La. R.S. 23:1201.4 is unconstitutional as it applies to Mr. Farmer’s claim for medical benefits and treatment.

*1253
Analysis

The court has jurisdiction over this appeal under La. Const, art. V, § 10(A)(1); the decision of the worker’s compensation judge is reviewed under the usual manifest error/ clearly wrong standard. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Creel v. Concordia Elec. Cooperative, Inc., 95-914 (La.App. 3 Cir. 1/31/96), 670 So.2d 406, writ den., 96-0577 (La.4/19/96), 671 So.2d 923.
IsThe language of the applicable statute is dear:
The employee’s right to compensation benefits, ... is forfeited during any period of incarceration; unless a worker’s compensation judge finds that an employee has dependents who rely on a compensation award for their support, in which ease said compensation shall be made payable and transmitted to the legal guardian of the minor dependent....
La. R.S. 23:1201.4. Thus, any benefits due to Mr. Farmer are forfeited while he is incarcerated, unless he has dependents who rely on his compensation for support. Thus, the only issue before this court is whether the worker’s compensation judge’s factual finding that Blake depended on Mr. Farmer for support is clearly wrong or manifestly erroneous. See Hunt Plywood, Inc. v. Estate of Davis, 26,161, 26,162 (La.App. 2 Cir. 10/26/94), 645 So.2d 248, 251, writ den., 94-2871, 94-2877 (La.1/27/95), 649 So.2d 388, which dealt with determining dependency for purposes of death benefits. A finding of dependency by the trial court is entitled to great weight, and should not be disturbed unless clearly wrong. Doyle v. United General Ins. Co., 458 So.2d 152, 155 (La.App. 3 Cir.1984).
Ms. Nelson testified at. trial that Mr. Farmer paid between $100 and $125 per week to help support Blake, indicating that he also contributed an additional $25 to $50 per week for household expenses, but only on a sporadic basis. However, Metro Lighting argued that Mr. Farmer’s payments were contributions for his own room and board in his daughter’s house. Metro claims any money going directly to support Blake was intermittent and irregular, and used for “extras” or entertainment. Finally, Metro points out that Blake was never claimed as a dependent on Mr. Farmer’s income tax returns, nor was any of this “support” ever documented. The proof of such an arrangement for support offered at trial primarily consisted of the testimony of Ms. Nelson.
UHowever, our review of the record reveals no manifest error in the worker’s compensation judge’s finding that Blake was at least partially dependent on his grandfather’s worker’s compensation benefits. As stated above, the trial court’s finding on the factual issue of dependency is entitled to great weight; absent a finding of manifest error, it should not be disturbed. Because no documentary evidence of support for Blake was presented, the judge was required to make its decision based only on witness testimony. It is hornbook law that the judge hearing the testimony is in the best position to evaluate witness credibility.
Ms. Nelson testified that Mr. Farmer did contribute to the support of Blake; Metro presented testimony from John Schexnayder, Mr. Fanner’s employer and friend, which indicated that Mr. Farmer had never mentioned providing any support to Blake. Schexnayder testified that Mr. Farmer indicated he made payments in order to satisfy his daughter’s demands for payment of room and board. Since the testimony presented by the two sides is in conflict, the worker’s compensation judge’s finding of dependency is not clearly erroneous.
As far as the determination of the amount of support, the trial court manufactured its own formula for allocating Mr. Farmer’s contributions between household expenses and support for Blake. Without any evidence to support the figures used other than testimony concerning the amount of the house payment, the court estimated minimum monthly household expenses of $960.00/month, or $240.00/person. The court then deducted $240.00 from a monthly average of the claimed contributions (about $483.75, or $112.50/week) to come up with the amount that went to Blake’s support, $243.75/month.
*1254 However, the record of the hearing contains no proof of the amounts used by the court, except the $760 per month house payment. Nothing in the record supports the judge’s calculations of expenses for utilities; moreover, the judge | gfailed to estimate costs for such items as food and entertainment expenses. We also note that the judge divided the total household expenses by four, despite the fact the testimony indicates that five people lived in the house at the time Mr. Farmer resided there. Even assuming the estimate of an average weekly contribution of $112.50 is correct, the court’s apparently arbitrary estimate of household expenses is unreasonable on the basis of the record before us. Accordingly, we remand to the worker’s compensation judge for a more accurate determination of the amount of support actually provided by Mr. Farmer to Blake.

Conclusion

The determination that Blake Bayard was at least partially dependent on Mr. Farmer’s benefits is affirmed. However, the case is remanded for a more accurate determination of the actual amount of benefits provided.
AFFIRMED IN PART; REMANDED.